UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 CR 50029 |
| | ) | |
| EDWARD F. BACHNER IV, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

FREDERICK J. KAPALA, District Judge:

Defendant, Edward F. Bachner IV, is charged with, among other crimes, five counts of possession of the biological agent Tetrodotoxin for use as a weapon (Counts IV, VI, VIII, X, and XII), 18 U.S.C. § 175(a), and five counts of possession of the biological agent Tetrodotoxin (Counts V, VII, IX, XI, and XIII), 18 U.S.C. § 175(b). Defendant moves to dismiss Counts IV through XIII contending that § 175 violates the Tenth Amendment to the United States Constitution. For the reasons that follow, defendant's motion is denied.

Section 175 provides:

§ 175. Prohibitions with respect to biological weapons

(a) In general.--Whoever knowingly develops, produces, stockpiles, transfers, acquires, retains, or possesses any biological agent, toxin, or delivery system for use as a weapon, or knowingly assists a foreign state or any organization to do so, or attempts, threatens, or conspires to do the same, shall be fined under this title or imprisoned for life or any term of years, or both. There is extraterritorial Federal jurisdiction over an offense under this section committed by or against a national of the United States.

(b) Additional offense.--Whoever knowingly possesses any biological agent, toxin, or delivery system of a type or in a quantity that, under the circumstances, is not reasonably justified by a prophylactic, protective, bona fide research, or other peaceful purpose, shall be fined under this title, imprisoned not more than 10 years, or both. In this subsection, the terms "biological agent" and "toxin" do not encompass any biological agent or toxin that is in its naturally occurring environment, if the biological agent or toxin has not been cultivated, collected, or otherwise extracted from its natural source.

(c) Definition.--For purposes of this section, the term "for use as a weapon" includes the development, production, transfer, acquisition, retention, or possession of any biological agent, toxin, or delivery system for other than prophylactic, protective, bona fide research, or other peaceful purposes.

Subsections (a) and (c) were enacted on May 22, 1990 in the Biological Weapons Anti-Terrorism Act of 1989 implementing the Biological Weapons Convention (BWC), an international agreement ratified by the United States Senate in 1974. See Biological Weapons Anti–Terrorism Act of 1989, Pub. L. No. 101-298, § 2, 104 Stat. 201. Section 175 was expanded with the additional offense in subsection (b) on October 16, 2001. See Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA Patriot Act) Act of 2001, Pub. L. No. 107-56, § 817(1), 115 Stat. 272.

The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. Defendant argues that § 175 violates the Tenth Amendment because it breaches the principles of federalism by permitting federal prosecution of localized offenses and is not based on a valid exercise of constitutional authority. More specifically, defendant argues that, like the chemical weapons statute at issue in United States v. Bond, 581 F.3d 128 (3d Cir. 2009), cert. granted ___ U.S. ___, 131 S. Ct. 455 (Oct. 12, 2010), § 175 does not contain a federal interest element or state a constitutional basis for its enactment such as the Commerce

Clause[1] and therefore violates the Tenth Amendment. Defendant also argues, without further elaboration, "the fact that § 175(a) was enacted pursuant to a treaty does not justify the otherwise unconstitutional government conduct."

In response, the government cites Missouri v. Holland, 252 U.S. 416 (1920), in support of its contention that a federal criminal statute promulgated to implement a treaty need not have an independent jurisdictional ground beyond the Necessary and Proper Clause of Article I, Section 8. Therefore, the government concludes, defendant's Tenth Amendment challenge should be rejected. The court agrees with the government.

As a threshold matter, the parties agree that defendant has standing to raise a Tenth Amendment claim. See Gillespie v. City of Indianapolis, 185 F.3d 693, 703 (7th Cir. 1999), abrogated on other grounds by District of Columbia v. Heller, 554 U.S. 570 (2008). The court notes that the United States Supreme Court is currently considering this standing issue. See United States v. Bond, No. 09-1227.

Under Article II, the President "shall have Power, by and with the Advice and Consent of the Senate, to make Treaties, provided two thirds of the Senators concur." U.S. Const. art. II, § 2, cl. 2. Treaties made pursuant to the power contained in Article II, "can authorize Congress to deal with matters with which otherwise Congress could not deal." United States v. Lara, 541 U.S. 193, 200 (2004) (quotation marks omitted). "If the treaty is valid there can be no dispute about the validity

---

[1]Although § 175 does not specifically mention the Commerce Clause, this court has previously held that § 175 was a valid exercise of Congress' power to regulate commerce under the Commerce Clause, U.S. Const. art. I, § 8, cl. 3. See Docket No. 104. Nevertheless, even assuming for argument's sake that § 175 was not validly enacted pursuant to the Commerce Clause, defendant's Tenth Amendment challenge fails for the reasons stated above.

3

of the statute under Article 1, Section 8, as a necessary and proper means to execute the powers of the Government." Holland, 252 U.S. at 432.

Defendant does not contend that the BWC was beyond the treaty power granted to the President by the Constitution. Section 175 was clearly legislation implementing the BWC. See Pub. L. No. 101-298, § 2, 104 Stat. 201 (stating that the purpose of the Biological Weapons Anti–Terrorism Act of 1989 is to implement the BWC and to protect the United States against the threat of biological terrorism). Section 175 is rationally related to the BWC's requirement that signatory nations pass domestic laws criminalizing the manufacture or possession of biological weapons. See S. Rep. No. 101-210, at 189 (1989) ("[A]rticle IV of the BWC also obligates each nation to 'take any necessary measures to prohibit and prevent' the development or retention of biological weapons 'within the territory of such State, under its jurisdiction or under its control anywhere.' Each party 'shall' do so 'in accordance with its constitutional processes.' A number of commentators have interpreted this provision as requiring parties to pass domestic legislation criminalizing the manufacture or possession of biological weapons. Put another way, article IV imposes an obligation upon parties to incorporate, or implement, the terms of the BWC in their own laws."). Section 175 is therefore necessary and proper and a valid exercise of Congress' power under the framework of Holland.

Citing Bond, Plaster v. United States, 720 F.2d 340 (4th Cir. 1983), and Oneida Indian Nation of New York v. New York, 860 F.2d 1145 (2d Cir. 1988), defendant maintains that several courts and scholars disagree about the scope and persuasiveness of Holland. In Bond, the Third Circuit mentioned the debate over the scope and persuasiveness of Holland, but did not reach the Tenth Amendment issue because they found that private parties lack standing to mount a Tenth

4

Amendment challenge. Bond, 581 F.3d at 135, 137. In Plaster, the Fourth Circuit noted that "the United States government must, in carrying out its treaty obligations, conform its conduct to the requirements of the Constitution, and that treaty obligations cannot justify otherwise unconstitutional governmental conduct," but did not mention Holland. Plaster, 720 F.2d at 348. In Oneida Indian Nation, the Second Circuit remarked in passing that, despite Holland, the ability of the treaty power to override "state prerogatives" is uncertain. Oneida Indian Nation, 860 F.2d at 1163. Uncertainty and scholarly debate notwithstanding, the decisions of the United States Supreme Court, like Lara and Holland, are binding on this court. Therefore, the cases cited by defendant do not support his Tenth Amendment challenge and his motion to dismiss Counts IV through XIII is denied.

Date: May 6, 2011

ENTER:

_____

FREDERICK J. KAPALA
District Judge